IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | Criminal No.   1:18-CR-163 (MAD) |
| | ) | |
| v. | ) | |
| | ) | |
| **MOJTABA BIRIA,** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**United States' Sentencing Memorandum**

The United States of America, through the United States Attorney for the Northern District of New York, respectfully asks the Court to sentence defendant Mojtaba Biria to a term of imprisonment, as well as to pay a fine of $5,000.

On June 20, 2018, pursuant to a plea agreement, the defendant pled guilty to a one-count information, charging conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and United States-imposed sanctions against Iran (often referred to as the Iranian Transactions and Sanctions Regulations, "ITSR").

The defendant is scheduled to be sentenced on August 14, 2019. As of that date, the defendant will have spent nearly 21 months in custody.

**1.   Introduction and Factual Background**

The Government adopts the facts as set forth in the Presentence Investigation Report ("PSIR") prepared by the United States Probation Office. PSIR ¶¶ 2, 8-9. The defendant is a German citizen who pled guilty on June 20, 2018 to conspiring to violate IEEPA and U.S. sanctions against Iran. He admitted to conspiring with Olaf Tepper ("Tepper") and others to acquire about $1 million worth of energy turbine parts from a company in Saratoga County, New York. The parts would have been shipped to Germany and then immediately re-shipped to Iran,

as part of a scheme to willfully violate U.S. export control laws. The defendant was arrested on November 23, 2017 at Boston's Logan International Airport. He has been in custody since that day.

**2.    Statutory Maximum Punishments**

Maximum term of imprisonment: 20 years, pursuant to 50 U.S.C. § 1705(c).

Maximum fine: $1 million, pursuant to 50 U.S.C. § 1705(c).

Supervised release term: the sentencing court may require the defendant to serve a term of supervised release of up to 3 years, to begin after imprisonment. *See* 18 U.S.C. § 3583(b)(2).

**3.    Guidelines Provisions**

**3.1    Criminal History Category**

The United States adopts the PSIR's conclusion that the defendant's criminal history category is I. PSIR ¶¶ 24-27.

**3.2    Offense Level**

The United States adopts the Sentencing Guidelines calculation set forth in the PSIR, resulting in a total offense level of 23. PSIR ¶¶ 13-23.

**3.3    Guidelines Range and Sentence**

The defendant's total offense level is 23 and his criminal history category is I. As a result, the Sentencing Guidelines advise that the defendant receive a sentence of 46-57 months in prison. PSIR ¶ 45.

4.  **Sentencing Recommendation**

    4.1  **Term of Imprisonment**

The Government respectfully asks that the Court impose a term of imprisonment and a $5,000 fine. Tepper, the defendant's co-conspirator, received a 24-month term of imprisonment for identical conduct. As the defendant is a foreign national, with no lawful status in the United States, the Court should not impose a term of supervised release.

A term of imprisonment, as well as a $5,000 fine, would be sufficient but not greater than necessary to achieve the goals set out in 18 U.S.C. § 3553(a), including the need for the sentence to reflect the nature and seriousness of the offense, and the need to deter people situated similarly to the defendant.

**Nature and seriousness of the offense:** IEEPA and related authorities permit the Executive Branch to use its law enforcement power to effectuate the foreign policy goals of the United States: here, to address the "unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" posed by Iran, a state sponsor of terrorism and so designated as of January 1984. PSIR ¶ 1(b)-(d); 50 U.S.C. § 4605(j) (designation authority); *see* U.S. State Department, "State Sponsors of Terrorism," available at https://www.state.gov/j/ct/list/c14151.htm (last visited July 29, 2019). "[T]o reform the actions of the government of Iran . . . the [ITSR] adopt a blunt instrument: broad economic sanctions intended to isolate Iran." *United States v. Banki*, 660 F.3d 665, 673 (2d Cir. 2011) (internal citations omitted).

By repeatedly evading the restrictions of the ITSR, the defendant undermined the efficacy of the economic sanctions that are intended to protect the national security of the United States. Persons who evade national security controls or who regularly engage in transactions

3

with countries that support international terrorism should be punished regardless of whether the conduct at issue directly furthers Iran's nuclear program or military. *See, e.g., United States v. Homa Int'l Trading Corp.*, 387 F.3d 144, 146 (2d Cir. 2004).

The defendant's violation was serious, both because it flouted the U.S. embargo against Iran and also because the energy turbine parts he was sending, and planning to send, are important to Iran's ability to generate power. The defendant was using, and planning to use, U.S. goods to help keep the lights on in a state sponsor of international terrorism. This is why, among other reasons, the base offense level is appropriately scored as a 26. U.S.S.G. § 2M5.1(a)(1)(B). *See, e.g., United States v. Hanna*, 661 F.3d 271, 294 (6th Cir. 2011) (holding that any transaction prohibited by the Executive Order implicated Section 2M5.1(a)(1), whether or not the goods are intended for some seemingly innocent use).

**The need to deter:** there are companies and individuals situated similarly to the defendant, who must be deterred from violating the U.S. embargo against Iran, and specifically from sending U.S. goods to Iran that help Iran maintain critical infrastructure. The punishment imposed should serve as an effective counterbalance to the profit and/or patriotic motives of people who are violating, or may be contemplating a violation of, U.S. export control laws.

The United States reserves the right to respond to defense arguments raised for the first time after the filing of this memorandum. Similarly, if the Court is considering a *sua sponte* departure from the applicable Guidelines range on a ground not previously identified by the parties or in the PSIR, the parties are entitled to notice and an opportunity to respond. *See* Fed R. Crim. P. 32(h), (i)(1)(c).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

Respectfully submitted this 29th day of July, 2019.

GRANT C. JAQUITH<br>
United States Attorney<br><br>
By: <u>*/s/ Michael Barnett*</u><br>
Richard D. Belliss and Michael Barnett<br>
Assistant United States Attorneys<br>
Bar Roll No. 515295 and 519140